ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| OFICINA DE LA PROCURADORA DE LAS MUJERES; JEZMALIE LÓPEZ LÓPEZ<br><br>Parte Recurrida<br><br>v.<br><br>BENNER PRODUCTS, LA CASA DE LOS PLAFONES, BEST BENNER BUILDING, CORP., FRANCISCO BENERO GARCÍA<br><br>Recurrente | KLRA202400092 | *Revisión Administrativa* procedente de la Oficina de la Procuradora de Las Mujeres<br><br>Querella Núm. OPM-Q-2023-01<br><br>Sobre:<br><br>Sala de Lactancia, Período de la Lactancia, Ley Núm. 427-2000; Ley Núm. 20-2021; Reglamento 8454<br><br>Procedimiento Adjudicativo de Acción Inmediata; Orden para Mostrar Causa |

Panel integrado por su presidenta, la Jueza Ortíz Flores, el Juez Rivera Torres, la Jueza Rivera Pérez y el Juez Campos Pérez

Rivera Pérez, Jueza ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de mayo de 2024.

Comparece Best Benner Building, Corp. (en adelante, parte recurrente) y nos solicita la revisión de la *Resolución Final* emitida el 29 de diciembre de 2023 y notificada el 4 de enero de 2024 por la Oficina de la Procuradora de las Mujeres (OPM). Mediante este dictamen, la OPM le impuso a la parte recurrente una multa administrativa por $10,000.00 y la ordenó a pagarle a la Sra. Jezmalie López López (en adelante, Sra. López López) la suma de $7,732.80 como compensación.

Por los fundamentos que expondremos, se confirma la *Resolución Final* recurrida.

Número Identificador
SEN2024_____

**I.**

El 31 de enero de 2023, la Sra. López López presentó ante la OPM una *Querella* sobre incumplimiento con la Ley Núm. 427-2000, *infra,* en contra de la parte recurrente.[1] En síntesis, la Sra. López López alegó que la parte recurrente incumplió con su deber legal como patrono de proveerle un lugar habilitado en su taller de trabajo para extraerse leche materna al reintegrarse a sus labores después de haber disfrutado de su licencia por maternidad.

El 21 de febrero de 2023, notificada el 22 de febrero de 2023, la OPM emitió una orden titulada *Procedimiento Adjudicativo de Acción Inmediata Orden para Mostrar Causa* dirigida a la parte recurrente, mediante la cual le notificó sobre la querella y el procedimiento adjudicativo iniciado en su contra.[2] Además, se le concedió un término de veinte (20) días para mostrar causa por la cual no se le debía imponer una multa[3] por incumplimiento con las exigencias de la Ley Núm. 427-2000, *infra,* acreditando mediante un escrito que la alegada violación a la Ley no había ocurrido y/o que la misma había sido corregida.[4]

El 9 de marzo de 2023, la parte recurrente presentó una *Moción en Cumplimiento de Orden para Mostrar Causa.*[5] En síntesis, la parte recurrente negó las alegaciones hechas en su contra en la querella. Alegó que se le proveyó un lugar provisional a la Sra. López López para extraerse leche materna que le garantizara privacidad y que, posteriormente, se construyó un cuarto de lactancia que cumplía con los requerimientos de la OPM.

---

[1] Apéndice del recurso de *Revisión Judicial*, págs. 1-5.
[2] Apéndice del recurso de *Revisión Judicial*, págs. 6-11.
[3] Aparte de la compensación que le provee como remedio la Ley Núm. 427 de 16 de diciembre de 2000, *infra.*, a la empleada agraviada.
[4] Además, se le informó, entre otras cosas, sobre su derecho a solicitar la celebración de una vista administrativa.
[5] Apéndice del recurso de *Revisión Judicial*, págs. 12-20.

El 30 y 31 de octubre de 2023, se celebró la vista adjudicativa, a la cual comparecieron las partes y sus abogados.[6] La parte querellante presentó como prueba testifical el testimonio de la Sra. López López y el de la Sra. Bethzaida Martínez Hernández, inspectora en la OPM. La parte querellada y aquí recurrente presentó como prueba testifical el testimonio de la Sra. Elizabeth Ramos Class, asesora de recursos humanos de Best Benner Building, Corp.; el del Sr. Francisco Benero, presidente de Best Benner Building, Corp., y el del Sr. Jason García Jenks, gerente de Best Benner Building, Corp.

El 29 de diciembre de 2023, el Oficial Examinador emitió su *Informe y Recomendación del Oficial Examinador*.[7] En este, el Oficial Examinador formuló varias determinaciones de hecho y derecho y, a base de estas, concluyó que la parte recurrente había incumplido con las disposiciones de la Ley Núm. 427-2000, *infra*, y de la Ley Núm. 9-2020, *infra*, al no haberle provisto a la Sra. López López un lugar privado, seguro e higiénico para extraerse leche materna en su taller de trabajo durante el periodo del 24 de octubre de 2022 al 1 de diciembre de 2022. Por entenderlas pertinentes, citamos las conclusiones del Oficial Examinador *in extenso*:

> "[...]
> El 24 de octubre de 2022, la querellante se reincorporó en su taller de trabajo, luego de disfrutar de su período de maternidad. Al incorporarse a su área de trabajo, la querellante no encontró un espacio habilitado por el patrono para extraerse la leche materna. En una reunión el Sr. José Benero le indicó a la querellante que podía realizar la extracción de leche en su oficina, en el baño o en el carro.
>
> No obstante, la oficina disponible para la extracción de leche materna contaba con riesgos significativos a la privacidad, seguridad e higiene. En particular, la oficina contaba con dos (2) puertas de cristal de color verdoso, una ventana amplia de cristal ubicada frente a la tienda y área de "*shoroom*" y una cámara de seguridad ubicada encima de la puerta principal. Aunque la ventana de cristal tenía tinte, si una persona se paraba justo al

---

[6] Apéndice del recurso de *Revisión Judicial*, págs. 151-167.
[7] Apéndice del recurso de *Revisión Judicial*, págs. 151-167.

frente del cristal podía mirar hacia adentro de la oficina. Cuando la querellante iba a extraerse leche materna tenía que ubicarse de espalda a la puerta principal, y desconcertar la cámara de seguridad.

Como adelantamos, los problemas de seguridad y privacidad no eran huérfanos, pues, además, la oficina, al ser una administrativa, tenía sus riesgos a la higiene y de salubridad, en cuanto a extracción de leche materna se refiere. Así también, la oficina estaba llena de papeles por todas sus superficies, con ordenadores, archivos, contadores de dinero, dinero en efectivo y caja fuerte. Quedó probado que la oficina de extracción era realmente un lugar donde ordinariamente entraban y salían personas (empleados, visitantes, compradores, suplidores, entre otros). Así, era un lugar donde razonablemente se podía entender que proliferaba la suciedad y los gérmenes por la falta de controles sanitarios y control de tráfico de personas.

Además, el área del escritorio era inadecuada; con el corto tiempo que la querellante tenía para extraerse la leche materna tenía que, antes de comenzar su extracción, hacer todo un ritual de limpieza y desinfección y hacer espacio en su escritorio de trabajo para colocar su máquina de extracción y sus botellas. La Ley Núm. 427, *supra*, es clara en que la obligación de proveer un espacio privado e higiénico es enteramente del patrono. En este caso se observó que la querellante tuvo que mantener la privacidad del espacio de extracción de leche materna en su taller de trabajo, subiéndose a un escalón para apagar la cámara de seguridad y / o taparla con un cartón. Todos los cristales que le rodeaban hacían de la oficina una pe[c]era. Cargar a la mujer trabajadora madre lactante con la tarea de encontrar privacidad en el espacio de extracción de leche materna del taller de trabajo no es acorde con el espíritu de la Ley Núm. 427, *supra*.

De igual forma, se observó que el patrono delegó la limpieza del taller de trabajo en todos los empleados de la empresa. Si bien, de ordinario, un patrono no está obligado a contratar servicios de limpieza, cuando tiene una madre lactante en el taller de trabajo surge la obligación indelegable del patrón de mantener limpia e higiénica el área designada para que sus empleadas o visitantes, que son madres lactantes, puedan lactar a sus bebes o extraerse la leche materna. Esta obligación, de mantener el área de extracción limpia e higiénica, no puede delegarse en la persona trabajadora que es persona lactante pues puede funcionar como un disuasivo para tomar la decisión voluntaria de lactar a [sic.] en horas laborales.

Aquí, la querellante estuvo siempre encargada de limpiar su propia oficina, la cual también era el espacio de extracción de leche. Luego de advenir persona lactante, el patrono no indagó con la querellante si ésta voluntariamente deseaba encargarse de la limpieza del espacio para extracción de leche materna, o si, por el contrario, requería de ayuda o asistencia. Cargar a la

persona trabajadora lactante con la tarea de desinfectar e higienizar el espacio de extracción de leche materna del taller de trabajo es contrario al espíritu de la Ley Núm. 427, *supra.*

Por otro lado, el patrono no pudo demostrar su teoría en cuanto a la libertad de contratación del gerente de operaciones y que el puesto está a la par con la alta jerarquía de la empresa. Arguyó el patrono que la querellante tenía que ser considerada como parte del grupo que compone la categoría de "patrono" y no una mera empleada. La querellante demostró que no tenía potestad para hacer un área de lactancia o de extracción de leche en el taller de trabajo. La querellante no tenía educación formal en administración de recursos humanos o derecho laboral. La querellante ejecutaba las decisiones tomadas por sus empleadores desde la distancia; era una empleada a la orden de los altos ejecutivos de la empresa. El patrono representado por su presidente Sr. Benero, demostró tener el control y la potestad absoluta de contratación.

Como ha establecido nuestro más alto foro, la Ley Núm. 427, *supra,* tiene unos criterios de fácil cumplimiento y especifica que, "si el patrono está realmente dispuesto a colaborar con su empleada debe proveerle un espacio limpio, privado y seguro para extraerse leche materna". *Siaca v. Bahía Beach Resort,* supra. Best Benner falló en habilitar un área adecuada para la madre lactante durante los meses de octubre a diciembre de 2022. El Tribunal Supremo de Puerto Rico no ha sido ambiguo al reconocer que la Ley Núm. 427, *supra,* tiene un sólo propósito, el de "reconocer los beneficios de la lactancia materna y garantizar a toda mujer trabajadora el derecho a amamantar a su hijo o hija, o a extraerse leche materna en su área de empleo, ya sea su patrono público o privado". *Id.*

Quedó demostrado que Best Benner no le proveyó un lugar adecuado a la querellante durante veinticinco (25) días de trabajo. También quedó demostrado que ello afectó la extracción de leche, el ánimo voluntario de la querellante de lactar y/o extraer leche, imponiéndole cargas onerosas que podrían imposibilitar la lactación o extracción de lecha [sic.]. Por consiguiente, Best Benner violó el ordenamiento jurídico vigente; en particular, Best Benner violentó las disposiciones de la Ley Núm. 427, *supra.* Tal y como establece la referida ley, los patronos que incumplen son responsables de pagar "tres veces el sueldo que devenga la empleada por cada día que se le negó el período para lactar o extraerse la leche materna".

La cuantía, conforme la disposición anteriormente esbozada corresponde a un total de $7,732.80 que Best Benner le debe compensar a la querellante por daños bajo la Ley Núm. 427, *supra.* El cálculo efectuado fue realizado conforme a: (i) el horario de trabajo de la querellante; (ii) el sueldo devengado para los meses de octubre a diciembre de 2022, y (iii) conforme a los

testimonios y evidencia vertida durante las vistas adjudicativas.
[...].”[8]

Finalmente, recomendó que se declarara Ha Lugar la *Querella* y, en consecuencia, se le impusiera a la parte recurrente una multa administrativa por diez mil dólares ($10,000.00) por incumplimiento con las disposiciones de estas leyes; y que, además, se le ordenara pagarle a la Sra. López López la suma de $7,732.80 como compensación, equivalente a tres (3) veces el sueldo que esta devengaba por cada día que no se le proveyó un lugar privado, seguro e higiénico para extraerse leche materna en su trabajo, conforme provee la Ley Núm. 427-2000, *infra.*

El 29 de diciembre de 2023, notificada el 4 de enero de 2024, la OPM emitió la *Resolución Final* recurrida, mediante la cual declaró Ha Lugar la *Querella* presentada por la Sra. López López, luego de acoger en su totalidad el informe y las recomendaciones del Oficial Examinador.[9] En consecuencia, se le impuso a la parte recurrente la multa y el pago de la compensación recomendada por el Oficial Examinador.

El 24 de enero de 2024, la parte recurrente presentó una *Moción en Solicitud de Consignación de Determinaciones de Hecho y Conclusiones de Derecho Adicionales, y Reconsideración,* la cual fue declarada No Ha Lugar por la OPM mediante la *Resolución Final sobre Reconsideración* emitida y notificada el 25 de enero de 2024.[10]

Inconforme, la parte recurrente acudió ante nos el 23 de febrero de 2024 mediante el presente recurso de *Revisión Judicial.* En este, señala la comisión por la OPM de los errores siguientes:

> **Primer Error:** Erró la Oficina de la Procuradora de la Mujer al emitir una orden de mostrar causa mediante el procedimiento adjudicativo de acción inmediata, a pesar de que la parte querellada estaba en cumplimiento de la Ley[.]

---

[8] Apéndice del recurso de *Revisión Judicial,* págs. 163-166.
[9] Apéndice del recurso de *Revisión Judicial,* págs. 168-170.
[10] Apéndice del recurso de *Revisión Judicial,* págs. 171-189 y 190-191.

**Segundo Error:** Erró la Oficina de la Procuradora de la Mujer al negarse a admitir evidencia de impugnación al amparo de la Regla 608 de evidencia[.]

**Tercer Error:** Erró la Oficina de la Procuradora de la Mujer al determinar que para utilizar un escrito para refrescar memoria al amparo de la Regla 613 de evidencia la parte querellada tenía que autenticarlo[.]

**Cuarto Error:** Erró la Oficina de la Procuradora de la Mujer al otorgarle credibilidad a las declaraciones de la investigadora de la Oficina de Procuradora de La Mujer.

**Quinto Error:** La Oficina de la Procuradora de La Mujer abus[ó] de su discreción al determinar que la parte querellada no proveyó a la parte querellante un área o espacio físico para extraerse la leche materna que garantizaba privacidad[,] seguridad e higi[e]ne[.]

El 13 de marzo de 2024, la parte recurrente presentó la Transcripción de la Prueba Oral (TPO) de la *Vista Adjudicativa* celebrada ante el Oficial Examinador el 30 y 31 de octubre de 2023.

Al día siguiente, la OPM presentó una copia certificada del expediente administrativo del caso.

El 16 de abril de 2024, la parte recurrente presentó su *Alegato Suplementario* haciendo referencia a las páginas y líneas de la TPO.

Finalmente, el 8 de mayo de 2024, la OPM presentó su *Oposición a: Recurso de Revisión.*

Contando con el beneficio de la comparecencia de las partes, la TPO, y la copia certificada del expediente administrativo, procedemos a resolver.

**II.**

**A.**

La revisión judicial de las decisiones administrativas tiene como fin delimitar la discreción de los organismos administrativos, para asegurar que ejerzan sus funciones conforme la ley y de forma razonable. *Unlimited v. Mun. de Guaynabo*, 183 DPR 947, 965 (2011); *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 264 (2007). A esos efectos, la revisión judicial comprende tres aspectos: la concesión del remedio apropiado, la revisión de las determinaciones de hecho

conforme al criterio de evidencia sustancial, y la revisión completa de las conclusiones de derecho. *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 217 (2012), citando a *Asoc. Fcias v. Caribe Specialty et al.* II, 179 DPR 923, 940 (2010).

Nuestro Tribunal Supremo ha señalado que las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal revisor, si se basan en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Batista, Nobbe v. Jta. Directores, supra*, pág. 216, citando a *Pereira Suárez v. Jta. Dir Cond.*, 182 DPR 485, 511-512 (2011). La evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Íd.*, citando a *Pereira Suárez v. Jta. Dir Cond., supra.* Dicho análisis requiere que la evidencia sea considerada en su totalidad, esto es, tanto la que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 437 (1997).

Debido a la presunción de regularidad y corrección de los procedimientos y las decisiones de las agencias administrativas, quien alegue ausencia de evidencia sustancial tendrá que presentar prueba suficiente para derrotar esta presunción, no pudiendo descansar en meras alegaciones. *Pacheco v. Estancias*, 160 DPR 409, 431 (2003). Para ello, deberá demostrar que existe otra prueba en el expediente, que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232, 245 (2007).

Si la parte afectada no demuestra la existencia de otra prueba que sostenga que la actuación de la agencia no está basada en

evidencia sustancial o que reduzca o menoscabe el valor de la evidencia impugnada, el tribunal respetará las determinaciones de hecho y no sustituirá el criterio de la agencia por el suyo. *Otero v. Toyota,* 163 DPR 716, 728 (2005). En cambio, las conclusiones de derecho son revisables en todos sus aspectos. *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 894 (2008). De esta manera, los tribunales, al realizar su función revisora, están compelidos a considerar la especialización y la experiencia de la agencia con respecto a las leyes y reglamentos que administra. *Asoc. Vec. de H. San Jorge v. U. Med. Corp.,* 150 DPR 70, 75-76 (2000). Así pues, si el punto de derecho no conlleva interpretación dentro del marco de la especialidad de la agencia, entonces el mismo es revisable sin limitación. *Rivera v. A & C Development Corp.,* 144 DPR 450, 461 (1997). Aun cuando el tribunal tiene facultad para revisar en todos sus aspectos las conclusiones de derecho de una agencia, se ha establecido que ello no implica que los tribunales revisores tienen la libertad absoluta para descartarlas libremente. *López Borges v. Adm. Corrección,* 185 DPR 603, 626 (2012); *Federation des Ind. v. Ebel,* 172 DPR 615, 648 (2007).

**B.**

"Puerto Rico, al igual que otras jurisdicciones en Estados Unidos y en el mundo, reconoce y protege el derecho de la mujer trabajadora a amamantar o extraerse leche materna en su lugar de trabajo." *Siaca v. Bahía Beach Resort,* 194 DPR 559, 576 (2016). La Ley Núm. 427 de 16 de diciembre de 2000, según enmendada, conocida como *"Ley para Reglamentar el Período de Lactancia o de Extracción de Leche Materna",* 29 LPRA sec. 478 *et seq.,* (en adelante, Ley Núm. 427-2000), reconoce la política pública adoptada por el Departamento de Salud en representación del Gobierno de Puerto Rico de promover la lactancia materna en Puerto Rico otorgándole a la mujer trabajadora un período de lactancia o extracción de leche

materna tanto en la empresa privada como en el Gobierno, sus instrumentalidades, municipios y corporaciones públicas. Véase, Exposición de Motivos de la Ley Núm. 427-2000, *supra.*

A esos efectos, la Ley le impone el deber al patrono de "garantizar a la madre lactante, que así lo solicite, el derecho de lactar a su criatura o extraerse la leche materna" en su taller de trabajo. Artículo 7 de la Ley Núm. 427-2000, *supra.*

En el Artículo 3 de la Ley Núm. 427-2000, *supra,* se reglamenta el período de lactancia o extracción de leche materna. Al respecto, este Artículo dispone lo siguiente:

> "Por la presente se reglamenta el período de lactancia o extracción de leche materna, proveyéndole a las madres trabajadoras que se reintegran a sus labores, después de disfrutar su licencia por maternidad, que tengan la oportunidad de lactar a su criatura durante una hora dentro de cada jornada de tiempo completo, que puede ser distribuida en dos periodos de treinta (30) minutos cada uno o en tres períodos de veinte (20), para acudir al lugar en donde se encuentra la criatura a lactarla, en aquellos casos en que la empresa o el patrono tenga un centro de cuido en sus facilidades **o para extraerse la leche materna en el lugar habilitado a estos efectos en su taller de trabajo. Dichos lugares deberán garantizar a la madre lactante privacidad, seguridad e higiene.** El lugar debe contar con tomas de energía eléctrica y ventilación. Si la empleada está trabajando una jornada de tiempo parcial y la jornada diaria sobrepasa las cuatro (4) horas, el periodo concedido será de treinta (30) minutos por cada periodo de cuatro (4) horas consecutivas de trabajo.
>
> En el caso de aquellas empresas que sean consideradas como pequeños negocios de acuerdo a los parámetros de la Administración Federal de Pequeños Negocios (SBA, por sus siglas en inglés), éstas vendrán obligadas a proveer a las madres lactantes un período de lactancia o extracción de leche materna de al menos media (1/2) hora dentro de cada jornada de trabajo a tiempo completo que puede ser distribuido en dos periodos de quince (15) minutos cada uno. Si la empleada está trabajando una jornada de tiempo parcial y la jornada diaria sobrepasa las cuatro (4) horas, el periodo concedido será de treinta (30) minutos por cada periodo de cuatro (4) horas consecutivas de trabajo." (énfasis suplido).

Como vemos, además de reglamentar la duración del período de lactancia o extracción de leche materna, la Ley Núm. 427-2000, *supra,* especifica las condiciones con las que debe cumplir el lugar

provisto por el patrono para extraerse la leche materna. Artículo 3 de la Ley Núm. 427-2000, *supra*. Se dispone que este lugar deberá estar "habilitado" para estos efectos en particular garantizándole a la madre lactante privacidad, seguridad e higiene. *Íd.*; *Siaca v. Bahía Beach Resort*, supra. Véase, además, Ley Núm. 155-2002, según enmendada, conocida como *"Ley para Designar Espacios para la Lactancia en las Entidades Públicas del Gobierno de Puerto Rico"*, 29 LPRA 478 *et seq.*; y Ley Núm. 9-2019, según enmendada, conocida como *"Carta de Derechos de la Mujer Trabajadora"*, 29 LPRA sec. 510l *et seq.*

Por otra parte, la Ley establece que "[e]l período de lactancia o de extracción de leche materna tendrá una duración máxima de doce (12) meses dentro del taller de trabajo, a partir del regreso de la madre trabajadora a sus funciones." Artículo 4 de la Ley Núm. 427-2000, *supra*. Además, se dispone que, "[u]na vez acordado el horario de lactar o de extracción de leche materna entre la madre lactante y el patrono, éste no se cambiará sin el consentimiento." Artículo 7 de la Ley Núm. 427-2000, *supra*.

Finalmente, se reconoce una causa de acción a toda madre lactante a quien su patrono le niegue el período otorgado mediante esta Ley para lactar o extraerse la leche materna. A esos efectos, la Ley establece que la perjudicada podrá "acudir a los foros pertinentes para exigir que se le garantice su derecho." Artículo 9 de la Ley Núm. 427-2000, *supra*. Así también, dispone que:

> "[e]l foro con jurisdicción podrá imponer una multa al patrono que se niegue a garantizar el derecho aquí establecido por los daños que sufra la empleada y que podrá ser igual a:
>
> (1) tres veces el sueldo que devenga la empleada por cada día que se le negó el período para lactar o extraerse la leche materna o;
>
> (2) una cantidad no menor de tres mil (3,000) dólares, lo que sea mayor.

En caso de que el sueldo sea menor al salario mínimo federal, por ser empleados a propina, según definido en el Fair Labor Standards Act (FLSA), se incluirá la propina en el cómputo del salario para la multa, o en su defecto, se utilizará el salario mínimo federal como base para computar la multa, en lugar del salario devengado, lo que sea de mayor beneficio para la madre lactante. Los remedios provistos por este Artículo serán compatibles y adicionales a los remedios provistos por cualquier otro estatuto aplicable." *Íd.*

### C.

El Reglamento sobre Procedimientos Adjudicativos e Investigativos de la Oficina de la Procuradora de las Mujeres, Reglamento Núm. 8454, Departamento de Estado, 10 de marzo de 2014, se adoptó en virtud de la Ley Núm. 20-2001, según enmendada, conocida como *"Ley de la Oficina de la Procuradora de las Mujeres"*, 1 LPRA sec. 311 *et seq.*, y la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como la *"Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico"*, 3 LPRA ant. sec. 2101 *et seq.* Artículo 1.2 del Reglamento Núm. 8454, *supra.*

Las disposiciones de este Reglamento son aplicables a todo tramite investigativo, adjudicativo, correctivo o de imposición de multas que se lleve a cabo por la OPM en el ejercicio de sus funciones investigativas y cuasi-judiciales. Artículo 1.3 del Reglamento Núm. 8454, *supra.*

Según el Artículo 4.1 del Reglamento Núm. 8454, *supra*, la OPM podrá, *motu proprio* o a solicitud de una reclamante, iniciar una investigación bajo los poderes y facultades de las Leyes y Reglamentos que administra, y en cualquier momento antes o después de radicada una querella, de acuerdo con sus normas internas.

De igual forma, la OPM podrá compeler a la producción de información y documentos mediante la emisión de ordenes interlocutorias, requerimientos de información, interrogatorios bajo

juramento, requerimiento de admisiones, recibir testimonios bajo juramento, datos o información y de ser necesario, la radicación de un proceso judicial para hacer cumplir lo requerido. Artículo 4.2 del Reglamento Núm. 8454, *supra.*

El incumplimiento con cualquier requerimiento de una investigación de la OPM conllevara la imposici6n de una multa administrativa de hasta diez mil dó1ares ($10,000.00) por cada violación. Artículo 4.3 del Reglamento Núm. 8454, *supra.*

En cuanto al procedimiento adjudicativo de acción inmediata, el Reglamento dispone que, una vez recibida la querella, la OPM podrá, sin la celebración de vista, emitir ordenes de mostrar causa y disponer los términos y condiciones correctivas que, por la evidencia a su disposición y a tenor con el derecho aplicable, entienda pertinentes. Artículo 8.1 del Reglamento Núm. 8454, *supra.* En la referida orden se notificará a la parte querellada que de la faz de la querella surge su incumplimiento con las leyes que a la OPM corresponde administrar, se especificaran las disposiciones legales que se entienden infringidas, y se le concederá un término de 20 días para mostrar causa por la cual no deba imponérsele una multa administrativa de hasta $10,000.00, con especificación de la cuantía de la multa. Artículo 8.2 del Reglamento Núm. 8454, *supra.* Además, se advertirá que, en su comparecencia por escrito, podrá acreditar que ha corregido la deficiencia; solicitar término adicional para cumplir; o solicitar una vista administrativa evidenciaria. Artículo 8.3 del Reglamento Núm. 8454, *supra.*

Cuando la parte querellada notifique que ha subsanado el incumplimiento con la ley que dio lugar a la querella, la OPM determinara si en efecto se ha cumplido con la ley, en cuyo caso se ordenará el archivo de la querella. Cuando la OPM determine que tales actuaciones no subsanan el incumplimiento con la ley que dio lugar a la querella, le concederá a la parte querellada un término

final para que lo subsane. Transcurrido el referido término sin que la parte querellada haya cumplido, se le impondrá la multa administrativa de la cual se le apercibió. Artículo 8.6 del Reglamento Núm. 8454, *supra.*

No obstante, lo establecido anteriormente, cuando de los hechos alegados en la querella surja que se requiere de una intervención inmediata, la OPM podrá además presentar ante el Tribunal General de Justicia la acción que proceda en derecho. Artículo 8.7 del Reglamento Núm. 8454, *supra.*

Por otra parte, el Artículo 11.1 del Reglamento Núm. 8454, *supra,* dispone que, en e1 procedimiento adjudicativo regirán los principios generales de evidencia. Las Reglas de Procedimiento Civil y las de Evidencia se utilizarán como guía y aplicarán en la medida en que se estime necesario para llevar a cabo los fines de la justicia.

Así también el Artículo 11.13 del Reglamento Núm. 8454, *supra,* dispone que las Reglas de Procedimiento Civil y de Evidencia no serán de estricta aplicación a las vistas administrativas, sino en la medida en que el (la) Funcionario(a) que presida la vista o la OPM lo estime necesario para llevar a cabo los fines de la justicia.

Cónsono con lo anterior, la Sección 3.13 (e) de la Ley Núm. 38-2017, según enmendada, conocida como *"Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico",* 3 LPRA sec. 9653, dispone que "[l]as Reglas de Evidencia no serán aplicables a las vistas administrativas, pero los principios fundamentales de evidencia se podrán utilizar para lograr una solución justa, rápida y económica del procedimiento".

En ese sentido, la Regla 110 de Evidencia, 32 LPRA Ap. VI R. 110, recoge los principios fundamentales que rigen el derecho probatorio puertorriqueño. Conforme a ello, el juzgador de los hechos deberá evaluar la prueba presentada para determinar cuáles hechos quedaron establecidos o probados. *Íd.* En lo pertinente, la

Regla 110 de Evidencia establece los siguientes principios:

"[...]

(c)Para establecer un hecho, no se exige aquel grado de prueba que, excluyendo posibilidad de error, produzca absoluta certeza.

(d)La evidencia directa de una persona testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que otra cosa se disponga por ley.

[...]

(f)En los casos civiles, la decisión de la juzgadora o del juzgador se hará mediante la preponderancia de la prueba a base de criterios de probabilidad, a menos que exista disposición al contrario. En los casos criminales, la culpabilidad de la persona acusada debe ser establecida más allá de duda razonable.

[...]

(h)Cualquier hecho en controversia es susceptible de ser demostrado mediante evidencia directa o mediante evidencia indirecta o circunstancial. Evidencia directa es aquélla que prueba el hecho en controversia sin que medie inferencia o presunción alguna y que, de ser cierta, demuestra el hecho de modo concluyente. Evidencia indirecta o circunstancial es aquélla que tiende a demostrar el hecho en controversia probando otro distinto, del cual por si o, en unión a otros hechos ya establecidos, puede razonablemente inferirse el hecho en controversia."

Cónsono con lo anterior, el Tribunal Supremo de Puerto Rico ha establecido que en un procedimiento adjudicativo administrativo se pueden adoptar las normas o principios fundamentales de las Reglas de Evidencia, cuando estas no son incompatibles con el procedimiento y sirvan para lograr una solución justa, rápida y económica de la controversia. *O.E.G. v. Rodríguez*, 159 DPR 98, 112 (2003). Ello, debido a que las Reglas de Evidencia de Puerto Rico hace viable el propósito de todo procedimiento adjudicativo administrativo o judicial, la búsqueda de la verdad. *Íd.*

Por último, nuestra jurisprudencia establece que, si bien no aplican las reglas de evidencia en las vistas administrativas, en aquellas ocasiones en que se utilicen, se interpretarán con mayor liberalidad que en el trámite judicial. *Íd.*, pág. 113.

**D.**

En cuanto a la admisión o exclusión errónea de evidencia, la Regla 104(a) de Evidencia, 32 LPRA Ap. VI, R. 104(a), en lo pertinente, dispone que "[l]a parte perjudicada por la admisión errónea de evidencia debe presentar una objeción oportuna, específica y correcta [...]." *Pueblo v. Santiago Irizarry*, 198 DPR 35, 44 (2017). En el caso de exclusión errónea de prueba, la Regla dispone, además, que:

> [L]a parte perjudicada deberá invocar el fundamento específico para la admisibilidad de la evidencia ofrecida y hacer una oferta de prueba de forma que surja claramente cuál es la evidencia que ha sido excluida y la naturaleza, propósito y pertinencia para la cual se ofrece. No será necesario invocar tal fundamento específico ni hacer la oferta de prueba cuando resultan evidentes del contexto del ofrecimiento.

> El tribunal permitirá la oferta de prueba y determinará si debe hacerse mediante un resumen de la evidencia ofrecida o el interrogatorio correspondiente. El tribunal podrá añadir cualquier manifestación que demuestre el carácter de la evidencia, la forma en que fue ofrecida, la objeción a su admisión y la resolución sobre la exclusión. Regla 104(b) de Evidencia, *supra.*

De esta forma, la Regla 104 de Evidencia, *supra*, permite que la parte perjudicada pueda apelar, en su momento, la determinación del foro de instancia. Ahora bien, para que el foro apelativo pueda dejar sin efecto dicha determinación, la parte perjudicada deberá cumplir con lo dispuesto en la Regla 105 de Evidencia, 32 LPRA Ap. VI, R. 105. Esta Regla dispone que, como regla general, no se dejará sin efecto una determinación de admisión o exclusión errónea de evidencia ni se revocará por ello sentencia o decisión alguna a menos que:

> (1) La parte perjudicada con la admisión o exclusión de evidencia hubiere satisfecho los requisitos de objeción, fundamento u oferta de prueba establecidos en la Regla 104, y

> (2) el tribunal que considera el señalamiento estime que la evidencia admitida o excluida fue un factor decisivo o sustancial en la sentencia emitida o decisión cuya revocación se solicita. Regla 105(a) de Evidencia, *supra.*

Con relación a este último requisito, la doctrina de error no perjudicial (*harmless error*) establece que los tribunales apelativos no revocarán una sentencia por admisión errónea de evidencia, a menos que el error haya sido "un factor decisivo o sustancial en la sentencia emitida". *Íd.*; *Pueblo v. Santiago Irizarry*, supra, pág. 45. Véase, además, *Pueblo v. Santos Santos*, 185 DPR 709, 728 (2012). Por lo tanto, si el error se considera no perjudicial porque la exclusión de la evidencia no hubiese producido un resultado distinto, se deberá confirmar el dictamen a pesar del error. *Pueblo v. Santiago Irizarry*, supra, pág. 45.

Por otra parte, y en lo pertinente a una de las controversias ante nuestra consideración, la Regla 613 de Evidencia, 32 LPRA Ap. VI, R. 613, rige lo referente a escritos para refrescar memoria. En particular, esta Regla dispone lo siguiente:

(a) Sujeto a lo dispuesto en el inciso (c) de esta regla, si durante su testimonio o con anterioridad al mismo, una persona testigo utilizare un escrito para refrescar su memoria sobre cualquier asunto objeto de su testimonio, será necesario presentar en la vista dicho escrito a solicitud de cualquier parte adversa. De presentarse el escrito, se ordenará la eliminación testimonio de la persona testigo sobre dicho asunto.

(b) Si se presenta dicho escrito en la vista, la parte adversa puede inspeccionarlo, contrainterrogar a la persona testigo sobre tal escrito y presentar como prueba cualesquiera de sus partes que sean pertinentes.

(c) Se eximirá la presentación del escrito en el juicio, y el testimonio del testigo no será eliminado, si dicho escrito:

(1) No está en posesión o bajo control de la persona testigo o de la parte que ofreció su testimonio sobre el particular.

(2) No era razonablemente asequible a dicha parte mediante el uso de las órdenes para la presentación de prueba documental o por cualquier otro medio disponible.

(3) Sólo es utilizado para refrescar la memoria antes de testificar en el juicio, y en su discreción, el tribunal estima que es innecesario requerir su presentación.

**III.**

En el primer, cuarto, y quinto error del recurso de *Revisión Judicial*, la parte recurrente señala que erró la OPM "al emitir una orden de mostrar causa mediante el procedimiento adjudicativo de acción inmediata, a pesar de que la parte querellada estaba en cumplimiento de la Ley"; "al otorgarle credibilidad a las declaraciones de la investigadora de la Oficina de Procuradora de la Mujer". Además, señala que la OPM "abus[ó] de su discreción al determinar que la parte querellada no proveyó a la parte querellante un área o espacio físico para extraerse la leche materna que garantizaba privacidad[,] seguridad e higi[e]ne". Estando estos errores relacionados, procederemos a atenderlos conjuntamente.

Examinado el recurso ante nuestra consideración (lo cual incluye la copia certificada del expediente administrativo y la TPO de la vista adjudicativa) a la luz del derecho expuesto, resolvemos sostener la determinación del Oficial Examinador acogida por la OPM. Las determinaciones de hechos formuladas por el Oficial Examinador se basan en evidencia sustancial que obra en el expediente. Ante la ausencia de pasión, prejuicio, parcialidad o error manifiesto, determinamos que debemos abstenernos de intervenir con la apreciación de la prueba que hizo el Oficial Examinador de la OPM.

A juicio del Oficial Examinador que presidió la vista adjudicativa, quedó probado que la parte recurrente incumplió con el deber legal de proveerle a la Sra. López López un lugar habilitado para extraerse leche materna en el taller de trabajo de Best Benner Building, Corp. durante veinticinco (25) días entre octubre a diciembre de 2022. En efecto, de un examen de la prueba testifical y documental presentada por las partes durante la vista adjudicativa, pudimos apreciar que la parte recurrente no le proveyó a la Sra. López López un lugar habilitado para extraerse leche

materna que le garantizara como madre lactante privacidad, seguridad, e higiene, según requiere la Ley Núm. 427-2000, *supra.*

La Sra. López López declaró que le informó con anticipación a su patrono que era madre lactante y le presentó una certificación médica al efecto.[11] Sin embargo, al reintegrarse a sus labores después de haber disfrutado de su licencia por maternidad, el único lugar disponible para extraerse lecha materna en el taller de trabajo de Best Benner Building, Corp. era su oficina, la cual no estaba habilitada a esos efectos. Los testimonios vertidos por la Sra. López López y la Sra. Bethzaida Martínez Hernández durante la vista administrativa, los cuales le merecieron credibilidad al Oficial Examinador de la OPM, así como las fotografías de la oficina (Exhibit 5 de la OPM)[12] y la *Hoja de Inspección Salas de Lactancia* de 5 de diciembre de 2022 (Exhibit 7 de la OPM),[13] demostraron que este lugar no era privado, seguro, e higiénico.[14] Además, coincidimos con el razonamiento de la OPM con relación a que el deber legal de habilitar un lugar para la extracción de leche materna recaía sobre la parte recurrente como patrono y no sobre la propia Sra. López López por razón del puesto que ocupaba en la empresa. No nos convencen los argumentos de la parte recurrente con respecto a este asunto.

Reconocemos que la parte recurrente posteriormente construyó una sala de lactancia que cumplía con los requerimientos de la OPM.[15] Sin embargo, durante el periodo por el cual se impuso la multa y se concedió la compensación impugnada, la Sra. López López tuvo que utilizar un lugar que le dificultaba el proceso de

---

[11] Véase, TPO de la *Vista Adjudicativa* de 30 de octubre de 2023, págs. 35-36.
[12] Apéndice del recurso de *Revisión Judicial,* págs. 100-105.
[13] Apéndice del recurso de *Revisión Judicial,* pág. 109.
[14] Véase, TPO de la *Vista Adjudicativa* de 30 de octubre de 2023, págs. 42-63 y 277-293.
[15] Apéndice del recurso de *Revisión Judicial,* págs. 110. Véase, además, TPO de la *Vista Adjudicativa* de 30 de octubre de 2023, págs. 309-310.

extracción de leche materna[16] en violación a la Ley y la política pública imperante.

Según expusimos, debido a la presunción de regularidad y corrección de los procedimientos y las decisiones de las agencias administrativas, quien alegue ausencia de evidencia sustancial tendrá que presentar prueba suficiente para derrotar esta presunción. *Pacheco v. Estancias*, supra. Deberá demostrar que existe otra prueba en el expediente, que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración, lo que en presente caso no ocurrió. *Gutiérrez Vázquez v. Hernández y otros*, supra.

A nuestro juicio, la parte recurrente no logró demostrar en este caso la existencia de otra prueba que sostuviera que la actuación de la agencia no estaba basada en evidencia sustancial o que redujera o menoscabe el valor de la evidencia impugnada, por lo que procede que respetemos las determinaciones de hecho de la agencia y no sustituyamos su criterio por el nuestro.

Por todo lo cual, resolvemos que los errores antes reseñados no se cometieron.

Por otra parte, en el segundo error del recurso de *Revisión Judicial*, la parte recurrente señala que erró la OPM "al negarse a admitir evidencia de impugnación al amparo de la Regla 608 de evidencia".[17] La parte recurrente considera que el Oficial Examinador que presidió la vista adjudicativa erróneamente excluyó evidencia, mediante la cual se pretendía impugnar la credibilidad de la Sra. López López como testigo. La prueba en cuestión consistía en unas fotografías alegadamente publicadas por la Sra. López López

---

[16] Véase, TPO de la *Vista Adjudicativa* de 30 de octubre de 2023, págs. 63-65.
[17] Véase, TPO de la *Vista Adjudicativa* de 30 de octubre de 2023, págs. 109-128.

en su perfil de la red social "*Facebook*", en las cuales aparecía lactando a su bebé.[18] A través de la presentación de esta prueba, la parte recurrente pretendía demostrar que la Sra. López López había renunciado a su derecho a la intimidad, por lo que no podía reclamar que requería de un lugar privado para extraerse leche materna en el trabajo.

Según reseñamos, en contra de la parte recurrente se presentó una querella sobre incumplimiento con la Ley Núm. 427-2000, *supra*, en la cual se alegó que había incumplido con su deber legal como patrono de proveerle un lugar habilitado en su taller de trabajo a la Sra. López López para extraerse leche materna al reintegrarse a sus labores después de haber disfrutado de su licencia por maternidad. Según expusimos, además de reglamentar la duración del período de lactancia o extracción de leche materna, la Ley Núm. 427-2000, *supra*, establece las condiciones con las que debe cumplir el lugar provisto por el patrono para extraerse la leche materna. Al respecto, el Artículo 3 de la Ley Núm. 427-2000, *supra*, dispone que este lugar deberá estar "habilitado" a estos efectos, garantizándole a la madre lactante privacidad, seguridad e higiene. Véase, además, *Siaca v. Bahía Resort*, supra; Ley Núm. 155-2002, *supra*; y Ley Núm. 9-2019, *supra*.

Evaluados los argumentos expuestos por la parte recurrente en su recurso, así como la prueba de impugnación en cuestión, estimamos que la prueba ofrecida y no admitida no era pertinente al valor probatorio o a la credibilidad del testimonio de la Sra. López López, por lo que determinamos que no se cometió el error señalado.

Finalmente, en el tercer error del recurso de *Revisión Judicial*, la parte recurrente señala que erró la OPM "al determinar que para

---

[18] Apéndice del recurso de *Revisión Judicial*, págs. 134-136.

utilizar un escrito para refrescar memoria al amparo de la Regla 613 de evidencia la parte querellada tenía que autenticarlo".

Según reseñamos, en la *Vista Adjudicativa* la parte recurrente presentó como prueba testifical el testimonio del Sr. Jason García Jenks, gerente de Best Benner Products Corp. Durante el examen directo, la representación legal de la parte recurrente solicitó que se le permitiera al testigo utilizar un documento para refrescar su memoria.[19] Se trataba del recibo de la orden de compra de los tintes del cristal fijo y las puertas de la oficina de la Sra. López López.[20] La admisibilidad de este documento fue objetada por la representación legal de la OPM por falta de autenticación previa.

Según expusimos, la Regla 105 de Evidencia, *supra*, dispone que no se dejará sin efecto una determinación de admisión o exclusión errónea de evidencia ni se revocará por ello la sentencia o decisión tomada a menos que el tribunal que considere el señalamiento estime que la evidencia admitida o excluida fue un factor decisivo o sustancial en la sentencia emitida o decisión cuya revocación se solicita. Si el error se considera no perjudicial porque la exclusión de la evidencia no hubiese producido un resultado distinto, se deberá confirmar el dictamen a pesar del error. *Pueblo v. Santiago Irizarry*, supra, pág. 45; *Izagas Santos v. Family Drug Center*, supra, págs. 483-84.

Al analizar el caso bajo el estándar de error no perjudicial, es forzoso concluir que la admisión de la prueba en cuestión no hubiese producido un resultado distinto. Véase, Regla 105(a) de Evidencia, *supra*. A nuestro juicio, esta prueba aportaría muy poco a la posición de la parte recurrente. Por último, la representación legal de la parte recurrente, según sus argumentos, pretendía utilizar el documento en cuestión no para revivir memoria, sino para

---

[19] Véase, TPO de la *Vista Adjudicativa* de 31 de octubre de 2023, págs. 10-45
[20] Apéndice del recurso de *Revisión Judicial*, pág. 137.

declarar a base de este, lo cual se aparta del propósito del escrito para refrescar memoria.

Por tanto, los señalamientos de errores segundo y tercero tampoco se cometieron.

**IV.**

Por los fundamentos anteriormente expuestos, se confirma la *Resolución Final* recurrida.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones